851 So.2d 655 (2003)
Luis CABALLERO, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-651.
Supreme Court of Florida.
July 10, 2003.
*657 Lewis A. Fishman, Plantation, FL, for Appellant.
*658 Charles J. Crist, Jr., Attorney General, and Melanie Ann Dale, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Luis Caballero appeals his convictions of first-degree murder, kidnapping, robbery, and burglary, and his respective sentences, including the sentence of death imposed for the crime of murder. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution. For the following reasons, we affirm Caballero's convictions and sentences.

FACTS
On July 15, 1995, the body of Denise Rose O'Neill was found dumped in a canal near the Sawgrass Expressway in Broward County. Her body was covered by a sheet and was bound with black shoelaces, a multicolored dog leash, and electrical cords at the ends of which were heating devices of the type used to warm reptiles. Her clothing had been cut along the right side of the crotch area.
Police canvassed Denise O'Neill's apartment complex, looking for neighbors with reptiles and dogs as pets, since a dog leash and cords with heating devices had been found on the victim's body. Investigators learned that Luis Caballero lived next door to O'Neill and owned snakes and a dog. When Caballero arrived home, he agreed to accompany detectives to the police station.
At the police station, following Miranda[1] warnings, Caballero confessed to O'Neill's murder. In a taped statement, Caballero gave the following account. He said that a friend, Isaac Brown, had recently moved into Caballero's apartment. On the night before the murder, Brown told Caballero that he intended to rob O'Neill. Although Caballero was initially uncomfortable with the idea, he agreed to serve as lookout.
On the day of the crime, Caballero saw O'Neill carrying a laundry basket up the stairs. As she reached her door, Brown grabbed her, pushed her inside Caballero's apartment, and shoved her to the floor. O'Neill struggled, but Brown and Caballero restrained her, using items from her laundry basket: they tied her legs and hands with towels and used a sock to gag her. Caballero told O'Neill that nothing would happen to her if she did what Brown said. She cooperated, giving the two men information regarding her credit cards and bank account.
Caballero left in O'Neill's car and withdrew money from her accounts. When he returned to the apartment, Brown told Caballero that while he was out, O'Neill had fought to free herself. Brown had tied her more securely with electrical cords, a multicolored dog leash, and a pillow case. Caballero and Brown told O'Neill that they would drop her off somewhere after dark. Although Caballero said that he hoped this was true, he was concerned because O'Neill was his next-door neighbor and could turn him in if she was released.
Caballero and Brown left O'Neill tied and went to the kitchen to make plans. They talked about killing her, but each wanted the other to do the killing. Finally, Brown said he would kill O'Neill if Caballero gave him more of O'Neill's money. Caballero agreed. The two men returned to the bedroom and committed the murder.
Although Caballero initially denied participating in the killing, he ultimately admitted that he helped Brown kill O'Neill. In a second recorded confession, Caballero *659 said that Brown tried to strangle O'Neill with an electrical cord, but O'Neill struggled and yelled, and the cord snapped. Brown used another cord, and Caballero covered O'Neill's mouth to muffle her screams while he pulled her head and Brown pulled the cord. O'Neill died after ten to twelve minutes. After O'Neill was dead, Caballero cut the crotch of her clothing and had sex with her, ejaculating inside.
Later that night, Caballero and Brown wrapped O'Neill's body in a sheet from Caballero's bed and tied the sheet with black shoelaces and electrical cords. They loaded her body into the trunk of her car at around 5 a.m. and dumped her body in a canal near the Sawgrass Expressway. Caballero and Brown then used the victim's credit cards to withdraw more money. While eating breakfast, they split the money.
At trial, the State introduced Caballero's taped confessions along with evidence that Caballero's fingerprints were found inside O'Neill's car, and evidence that his DNA matched the semen on vaginal swabs gathered during the autopsy. After the State rested, the defense chose not to testify or present evidence. The jury found Caballero guilty of first-degree murder, kidnapping, robbery, and burglary.
During the penalty phase, several witnesses testified on Caballero's behalf, but he did not take the stand. The character witnesses testified that Caballero was nonaggressive and a follower, and that he had attended special educational classes due to learning disabilities. While in prison awaiting trial, Caballero completed a course in anger management and in parenting. Caballero also presented the testimony of a licensed psychologist who had administered several tests to Caballero, including the Minnesota Multiphasic Personality Inventory 2 (MMPI-2). The psychologist was unable to interpret the results of the MMPI-2 because Caballero's answers to the test were consistent with an overreporting of problems, possibly in an effort to exaggerate complaints. Other test results indicated that Caballero's IQ was below average (twelfth percentile).
The jury recommended death by a vote of eight to four. The trial court found that four separate aggravators[2] were proven and found that each of the aggravating circumstances, standing alone, would be sufficient to outweigh the six mitigating circumstances.[3] Accordingly, the judge sentenced Caballero to death.

ANALYSIS
Caballero raises seven issues in this appeal.[4] For the following reasons, we conclude that he is entitled to no relief.

*660 I. Right to Remain Silent
In his first claim, Caballero asserts that the prosecutor impermissibly commented during closing arguments on Caballero's exercising his right to remain silent. During closing arguments, defense counsel had argued that Caballero did not want to kill O'Neill. The prosecutor's closing statement rebutted this argument, saying, "You can tell ... what a man intends by what he does not by what he desires. What does he do? According to the [defendant's] statement, uncontradicted, what does he do?" Caballero objected to the prosecutor's reference to the evidence as uncontradicted, contending this shifted the burden of proof to Caballero. The trial court overruled Caballero's objection to the prosecutor's statement and denied Caballero's motion for a mistrial.
Caballero argues that the prosecutor's statement was an impermissible comment on his right to remain silent, and that the prosecutor's statement improperly shifted the burden of proof to the defense. We disagree. A defendant has the constitutional right to decline to testify against himself in a criminal proceeding; therefore, "any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." Rodriguez v. State, 753 So.2d 29, 37 (Fla.2000) (quoting State v. Marshall, 476 So.2d 150, 153 (Fla.1985)). However, it is permissible for the State to emphasize uncontradicted evidence for the narrow purpose of rebutting a defense argument since the defense has invited the response. See id. at 38-39 (citing Barwick v. State, 660 So.2d 685, 694 (Fla.1995); Dufour v. State, 495 So.2d 154, 160 (Fla.1986)). Here, the State emphasized the evidence of Caballero's actions for the purpose of countering the defense argument that Caballero did not want to kill O'Neill. The defense's argument invited the State's response. In this context, the prosecutor's statement directed the jury's attention to the evidence of Caballero's actions in contrast to his professed desire, rather than to Caballero's failure to testify.
Further, even if one were to interpret the prosecutor's statement as a comment on the defendant's failure to testify, Caballero would not be entitled to relief. Erroneous comments require reversal only where there is a reasonable possibility that the error affected the verdict. Rodriguez, 753 So.2d at 39. In this case, Caballero's voluntary, detailed confession to the crime was substantiated by physical evidence, including fingerprint and DNA evidence. Based on this evidence supporting the verdict, the asserted error was harmless beyond a reasonable doubt. Caballero is not entitled to relief on this claim.

II. Aggravating Circumstances
Next, Caballero claims that the trial court erred in concluding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of legal or moral justification (CCP). To establish the CCP aggravator, the evidence must show *661 that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated), and that the defendant exhibited heightened premeditation (premeditated), and that the defendant had no pretense of moral or legal justification.
Jackson v. State, 648 So.2d 85, 89 (Fla. 1994) (citations omitted).
In reviewing this claim, we do not second-guess the trial court's factual findings; instead, we limit our review to ensuring that the trial court applied the correct rule of law and, if so, that there is competent, substantial evidence to support its findings. See Willacy v. State, 696 So.2d 693, 695 (Fla.1997). The trial court based its finding of CCP on the fact that Caballero and Brown discussed and planned the murder before the fatal incident began, and that Caballero had an extended period of time in which to reflect upon the actions in which he was going to participate. The record contains competent, substantial evidence to support the trial court's finding of this aggravator.
Alternatively, Caballero contends that the trial court improperly multiplied the aggravating circumstances because it considered some of the same facts when finding the three aggravating factors of CCP; heinous, atrocious, or cruel murder (HAC); and murder committed for the purpose of avoiding arrest. A finding of multiple aggravating circumstances is improper where the aggravators refer to the same aspect of the crime. Griffin v. State, 820 So.2d 906, 914-15 (Fla.2002). Upon review of the record and sentencing order, we conclude that the trial court relied on different aspects of the crime to find the aggravators of CCP, HAC, and avoiding arrest. The court found that avoiding arrest was the motive behind the murder, i.e., to eliminate the sole witness who could identify the perpetrators of the completed crimes of burglary and robbery. The aggravating factor of CCP was based on the manner in which the killing was planned and discussed, i.e., the co-perpetrators engaged in a lengthy discussion on how the victim would be killed and haggled over the amount of payment for killing her. Finally, the method of the killing constituted HAC, i.e., the perpetrators held the victim down while strangling her for over ten minutes. We conclude that the trial judge relied on different aspects of the crime in finding each of these aggravators; thus, the finding of multiple aggravating factors was proper. See Griffin, 820 So.2d at 916.

III. Age as a Mitigating Circumstance
Caballero next argues that the trial court erred in failing to consider age as a mitigating factor. We disagree. The determination of whether age is a mitigating factor depends on the circumstances of each case, and is within the trial court's discretion. Scull v. State, 533 So.2d 1137, 1143 (Fla.1988). Under our review for abuse of discretion, we will uphold the trial court's determination unless it is "arbitrary, fanciful, or unreasonable," so that no reasonable person would adopt the trial court's view. Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). This Court has frequently held that a sentencing court may decline to find age as a mitigating factor in cases where the defendants were twenty to twenty-five years old at the time their offenses were committed. See Garcia v. State, 492 So.2d 360, 367 (Fla.1986); Mills v. State, 476 So.2d 172, 179 (Fla. 1985). The court found that Caballero committed the crime at the age of twenty. The court considered Caballero's age in *662 light of the evidence presented, including the results of psychological tests. The court concluded that Caballero did not demonstrate a lack of mental or emotional maturity, nor did Caballero demonstrate that he was unable to take responsibility or appreciate the consequences of his acts. In light of the record below, we conclude that the trial court did not abuse its discretion by rejecting Caballero's age as a mitigating factor.

IV. Coperpetrator's Confession
In his fourth claim, Caballero asserts that the trial court erred in ruling that, if Caballero were permitted to introduce evidence that his coperpetrator, Isaac Brown, was convicted at a separate trial of only second-degree murder, then the prosecution would be permitted to introduce Brown's confession in order to show the evidence on which Brown's conviction was based. Caballero argues that he should have been permitted to introduce the fact of Brown's conviction to support a proportionality argument to the jury, i.e., to argue that his own sentence should not exceed life imprisonment. However, Caballero simultaneously argues that the jury should not have been allowed to hear the evidence on which Brown was convicted since this evidence, Brown's testimony in particular, would constitute hearsay highly prejudicial to Caballero.[5]
Caballero misstates the trial court's ruling on the issue and asks this Court to rule on an issue not presented by the record. At trial, when Caballero sought to introduce Brown's second-degree murder conviction into evidence to support a proportionality argument, the prosecutor argued that if Brown's conviction was introduced, then the State should be permitted to introduce Brown's confession to show the evidence on which the conviction was based. The court initially indicated that the proportionality issue could be raised before the court at a Spencer[6] hearing. Caballero insisted that he wanted the jury to consider Brown's conviction, though without being permitted to consider the confession underlying the conviction. The court explained that the problem with this approach would be that the jury would not know the factual evidence on which Brown's conviction was based, and thus could not appropriately assess the significance of the conviction. The court indicated that if Caballero introduced the conviction into evidence, the prosecution would have an opportunity to explain the facts on which the conviction was based. Since Caballero at that juncture abandoned his attempt to introduce Brown's conviction into evidence, this Court has no way of knowing what the trial court's evidentiary rulings on the substance of Brown's confession would have been. Caballero suggests that the trial court might have granted the prosecution an unfettered right to introduce prejudicial and inflammatory aspects of Brown's confession, but this is not what happened at trial. This Court cannot rule on assertions of errors which did not in fact occur. Caballero is not entitled to relief on this claim.

V. Relative Culpability
Caballero next asserts that his sentence of death is disproportionate in light of his coperpetrator Brown's sentence to life imprisonment. He asserts that the evidence shows that Brown was equally, if not more, culpable in the killing. Where more than one defendant was involved in the commission of a crime, this Court performs an analysis of relative culpability to ensure that equally culpable codefendants *663 were treated alike in capital sentencing and received equal punishment. See Shere v. Moore, 830 So.2d 56, 60 (Fla.2002). Here, however, we cannot conduct a relative culpability analysis because Caballero and Brown were not found to be equally culpable. Instead, a jury at a separate trial convicted Brown of only second-degree murder. It is not this Court's role to consider or re-weigh the evidence that led to Brown's conviction of a lesser degree of murder than Caballero's. For our analysis, it is decisive that Brown's culpability was determined to be less than Caballero's. Where coperpetrators are not equally culpable, the death sentence of the more culpable defendant is not disproportionate where the other receives a life sentence. See Jennings v. State, 718 So.2d 144, 153 (Fla.1998) ("[D]isparate treatment of codefendants is permissible in situations where a particular defendant is more culpable."); Steinhorst v. Singletary, 638 So.2d 33, 35 (Fla.1994) (where a codefendant was convicted of second-degree murder, his life sentence was not relevant to the petitioner's claim that the death penalty was disproportionate). This claim is denied.

VI. Proportionality
Caballero further argues that his death sentence is disproportionate in light of other capital cases. In performing a proportionality review, this Court is committed to reserving the death penalty for only the most aggravated and the least mitigated of first-degree murders. See Urbin v. State, 714 So.2d 411, 416 (Fla. 1998). Proportionality review entails a qualitative analysis of the totality of the circumstances in a case as compared to other cases in which the death penalty has been imposed, thereby providing for uniformity in the application of the death penalty. See id. Here, the trial court found that four aggravating factors were established and several nonstatutory mitigators applied. The weight of these aggravators and mitigators is comparable to those of other cases where we have affirmed the death penalty. See, e.g., Shellito v. State, 701 So.2d 837 (Fla.1997) (affirming the death penalty of a twenty-year-old defendant where the trial court found two aggravators and various nonstatutory mitigation consisting of alcohol abuse, a mildly abusive childhood, difficulty reading, and a learning disability); Spencer v. State, 691 So.2d 1062 (Fla.1996) (affirming the death sentence where the trial court found HAC and prior violent felony aggravators outweighed two statutory mental mitigators and numerous nonstatutory mitigators); Geralds v. State, 674 So.2d 96, 105 (Fla.1996) (affirming the death sentence where the murder was HAC and committed during the commission of a robbery, and where both statutory and nonstatutory mitigation was afforded little weight). Accordingly, we deny this claim.

VII. Constitutionality of Florida's Capital Sentencing System
In his final claim, Caballero asserts that Florida's capital sentencing scheme violates the United States Constitution under the holdings of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This Court has recently addressed this argument and denied relief. See Jones v. State, 845 So.2d 55 (Fla.2003). Additionally, one of the aggravating circumstances the judge considered was that Caballero committed the murder during the commission of a burglary and kidnapping. These crimes were charged in the indictment and found by a unanimous jury beyond a reasonable doubt. The trial judge determined that any one of the aggravating factors, standing alone, *664 would be sufficient to outweigh the mitigating circumstances. Caballero is not entitled to relief on this claim.

CONCLUSION
For the reasons stated above, we affirm Caballero's convictions and sentences, including his sentence of death.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
PARIENTE, J., concurs specially with an opinion.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
PARIENTE, J., specially concurring.
I concur in the majority opinion and write separately only to specify the reason for my conclusion that Caballero is not entitled to relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). As I have stated in other cases, in my view the aggravating factor of a murder committed in the course of an enumerated felony, resting on a unanimous verdict of guilt as to the enumerated felony, satisfies the minimum requirements of Ring and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See Nelson v. State, 850 So.2d 514, 2003 WL 21554841 (Fla. July 10, 2003) (Pariente, J., specially concurring); see also Cole v. State, 841 So.2d 409, 431 (Fla. 2003) (Pariente, J., concurring in result only); Fotopoulos v. State, 838 So.2d 1122, 1137 (Fla.2002) (Pariente, J., concurring in result only); Israel v. State, 837 So.2d 381, 394 (Fla.2002) (Pariente, J., concurring in result only), cert. denied, ___ U.S. ___, 123 S.Ct. 2582, 156 L.Ed.2d 611 (2003).
ANSTEAD, C.J., concurring in part and dissenting in part.
For the reasons I expressed in my opinion in Duest v. State, No. SC00-2366, slip op. at 36-48, ___ So.2d ____, ____, 2003 WL 21467248 (Anstead, C.J., concurring in part and dissenting in part), I cannot agree with the majority's discussion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).[7] Even if we were to rewrite Florida's capital sentencing scheme to equate a guilt phase conviction with an automatic finding of the aggravating circumstance that the murder was committed during the commission of an enumerated felony, the fact remains that the trial judge alone found three other serious aggravating circumstances and utilized them in imposing the death sentence.[8]
*665 Thus, in direct violation of the tenets of Ring, the death sentence in this case is explicitly premised on factfinding done by a judge alone.
The majority also refers to the judge's finding that "any one of the aggravating factors, standing alone, would be sufficient to outweigh the mitigating circumstances." Majority op. at 16. I do not find this additional finding of fact by the judge to make any more compelling a case for finding a Ring violation harmless. Notably, the jury voted eight to four in favor of death, which means at least four members of the jury disagreed that each of the aggravating circumstances standing alone outweighed all of the mitigation.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The aggravating factors were: (1) the capital felony was committed while the defendant was engaged in the commission of a robbery or kidnapping; (2) the crime was committed for the purpose of avoiding or preventing a lawful arrest; (3) the murder was especially heinous, atrocious, or cruel (HAC); and (4) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).
[3] The trial judge found the following mitigators applied: (1) Caballero had no significant prior criminal history (little weight); (2) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbance (some weight); (3) Caballero had a partial hearing loss and learning disabilities (some weight); (4) Caballero is a loving father for his two children and never physically abused their mother (little weight); (5) Caballero was always a loving brother and son (little weight); and (6) Caballero adjusted to prison life and successfully completed substance abuse, anger management, and parenting programs (some weight).
[4] Caballero raises the following claims: (1) during the closing statements, the prosecutor impermissibly commented on Caballero's right to remain silent; (2) the trial court erred in finding that the capital felony was committed in a cold, calculated, and premeditated manner; (3) the trial court erred in failing to consider the defendant's age as a mitigator; (4) the trial court erred in ruling that admission of testimony as to the codefendant's conviction of second-degree murder would "open the door" to the admission of the codefendant's hearsay confession; (5) the sentence of death is disproportionate when considering that his coperpetrator was convicted of second-degree murder; (6) the sentence of death is disproportionate when compared to other capital cases; and (7) Florida's capital sentencing scheme is unconstitutional.
[5] Brown's confession implicated Caballero as being more responsible for the murder.
[6] Spencer v. State, 615 So.2d 688 (Fla.1993).
[7] The majority cites to Jones v. State, 845 So.2d 55 (Fla.2003), as having resolved the question of whether Florida's sentencing scheme violates Ring, but in Jones the Court simply cited the previous plurality opinions in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). As I explained in Duest, Bottoson and King were "only plurality opinions and a majority of justices (four), wrote separate opinions acknowledging that Ring impacted Florida's death penalty scheme in a variety of ways." Duest, slip op. at 14, ___ So.2d at ____ n. 14.
[8] Even if one aggravating circumstance is inherent in the jury's guilt phase verdict, the trial judge in this case also found: (1) the crime was committed for the purpose of avoiding or preventing a lawful arrest; (2) the murder was especially heinous, atrocious, or cruel (HAC); and (3) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). Notably, we have previously recognized that HAC and CCP "are two of the most serious aggravators set out in the statutory sentencing scheme." Larkins v. State, 739 So.2d 90, 95 (Fla.1999).