*690 CANADY, J.,
concurring in part and dissenting in part.
I concur in the decision to affirm McCloud’s convictions, but I dissent from the decision to vacate his death sentences based on the majority’s relative culpability analysis. The relative culpability of McCloud as compared to his codefendants is irrelevant here because all of the code-fendants were either convicted of a lesser degree of murder or otherwise ineligible for the death penalty. Therefore, I would affirm McCloud’s death sentences.
We have previously held that “once a codefendant’s culpability has been determined by a jury verdict or a judge’s finding of guilt we should abide by that decision, and only when the codefendant has been found guilty of the same degree of murder should the relative culpability aspect of proportionality come into play.” Shere v. Moore, 830. So.2d 56, 62 (Fla.2002). “In order to have that same degree of blame or fault the codefendants must, at a minimum, be convicted of the same degree of the crime.” Id. at 61. “Moreover, the codefendant should not only be convicted of the same crime but should also be otherwise eligible to receive a death sentence, i.e., be of the requisite age and not [intellectually disabled].” Id. at 62. Thus, as we recently reiterated in Brown v. State, 143 So.3d 392, 406-07 (Fla.2014), this Court conducts a relative culpability analysis only in cases in which codefen-dants are convicted of first-degree murder and not otherwise ineligible for the death penalty.
In Brown, we stated that “by virtue of [Brown’s codefendant’s] plea and second-degree murder conviction, the relative culpability of [Brown’s codefendant] for the murder ... has already been determined to be less than that of Brown,” who was convicted of first-degree murder. 143 So.3d at 407. In Caballero v. State, 851 So.2d 655, 663 (Fla.2003), we similarly concluded that we could not conduct a relative culpability analysis because Caballero’s co-defendant was convicted of second-degree murder. Although the evidence presented at Caballero’s trial showed that it was the codefendant who actually offered to kill and thereafter strangled the victim, we stated that “[i]t is not this Court’s role to consider or re-weigh the evidence that led to [the codefendant]’s conviction of a lesser degree of murder than Caballero’s.” Caballero, 851 So.2d at 663. Instead, we found it “decisive that [the codefendant]’s culpability was determined to be less than Caballero’s” based on the codefendant’s second-degree murder conviction. Id.
In cases in which the only codefendant to receive a death sentence is the only codefendant convicted of first-degree murder, this Court has consistently declined to undertake a relative culpability analysis. We have held that the sentence of a code-fendant who was not convicted of first-degree murder is “not relevant to a claim of disparate sentencing.” Steinhorst v. Singletary, 638 So.2d 33, 35 (Fla.1994). Thus, because McCloud’s codefendants who received lesser sentences were convicted of a lesser degree of murder, the trial court was correct that “from a legal point of view,” McCloud did not receive disparate treatment. McCloud’s convictions for first-degree murder render him more legally culpable than his codefen-dants.
“Underlying our relative culpability analysis is the principle that equally culpable co-defendants should be treated alike in capital sentencing and receive equal punishment.” Shere, 830 So.2d at 60. However, “[i]t is the crime for which the defendant is convicted that determines his or her culpability,” not the particular facts of the case. Id. at- 62. Thus, the principle underlying our relative culpability analysis *691 is inapplicable here; because McCloud was convicted of first-degree murder, he and his codefendants are not “equally culpable” under the law. Nor were the codefen-dants subject to “capital sentencing.” And McCloud is ineligible to receive punishment equal to the term-of-years sentences received by his codefendants; by virtue of his capital convictions, the only sentencing options available for McCloud are life imprisonment or death. See § 921.141(1), Fla. Stat. (2012) (“Upon conviction or adjudication of guilt of a defendant of a capital felony, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment....”).
Notwithstanding the fact that McCloud was the only codefendant convicted of first-degree murder, the majority proceeds to conduct a relative culpability analysis based on its own assessment of the facts of the case. The reason provided for this departure from our precedent is the majority’s view that “the relative culpability of the defendant as compared with the codefendant is so clear under the unique circumstances of this case that his death sentence must be reduced to a life sentence.” Majority op. at 688. The “circumstances” referenced are based on the majority’s conclusions that McCloud was not “the shooter,” the “prime instigator,” the “ringleader,” or “a dominant player.” Id. at 688-89. But the majority’s analysis is flawed in several respects.
First, the majority improperly made its own factual finding that “McCloud was not the shooter.” Id. at 688. Neither the jury nor the trial court made such a finding, and this Court is not in a position to do so. See Carr v. State, 156 So.3d 1052, 1073 (Fla.) (Pariente, J., concurring) (“A determination regarding relative culpability requires factual findings that this Court is not in a position to make in the first instance.” (citing Puccio v. State, 701 So.2d 858, 860 (Fla.1997))), cert. denied, — U.S. -, 136 S.Ct. 55, 193 L.Ed.2d 58 (2015). The majority’s conclusion that McCloud was not the shooter is based on the jury’s interrogatory verdict. See majority op. at 683 (“[T]he jury ultimately found that McCloud merely possessed a firearm but did not discharge it during the commission of the crimes — indicating that he was not found to be a shooter.”). But the interrogatory verdict cannot be interpreted as an affirmative finding • by the jury that McCloud was not a triggerman. Instead, it reflects only the jury’s conclusion that the State failed to prove beyond a reasonable doubt that McCloud actually discharged a firearm during the commission of the crimes. It provides no indication as to whether the jury actually concluded that McCloud was in fact not a triggerman rather than that the evidence presented was insufficient to support the conclusion that he was a triggerman beyond and to the exclusion of every reasonable doubt. See State v. McCloud, No. 2009CF-007439-XX (Fla. 10th Cir.Ct. Sept. 4, 2012) (Sentencing Order at 18) (“[T]he jury either concluded that' someone else shot Dustin Freeman and Tamiqua Taylor, or that there was insufficient evidence to prove beyond a reasonable doubt that Robert McCloud was the shooter.”). Indeed, the majority recognizes that the evidence presented at trial “attributes more culpability to McCloud as a shooter than what the jury verdict actually reflects.” Majority op. at 683. At trial, codefendant Andre Brown testified that he saw McCloud fire two shots upon kicking in the door to Wilkins Merilan’s house and that McCloud shot Tamiqua Taylor in the head. It is not the prerogative of this Court to go beyond the verdict form and speculate about additional factual findings the jury may or may not have made in reaching its verdict.
*692 Second, each of the cases cited by the majority in support of its decision to vacate McCloud’s death sentences is readily distinguishable from this case and does not actually support the majority’s decision. In Gonzalez v. State, 136 So.3d 1125 (Fla.), cert. denied, — U.S. -, 135 S.Ct. 193, 190 L.Ed.2d 150 (2014), Ray v. State, 755 So.2d 604 (Fla.2000), Puccio, 701 So.2d 858, and Hazen v. State, 700 So.2d 1207 (Fla.1997), our relative culpability analyses were undertaken because each case involved codefendants who were also convicted of first-degree murder. Craig v. State, 510 So.2d 857, 869-70 (Fla.1987), was a judicial override case in which we upheld Craig’s death sentence despite the jury’s recommendation of a life sentence and the triggerman codefendant’s plea to reduced charges and receipt of a life sentence because there was evidence to show that Craig was the planner and the instigator of the murder and that the codefendant acted under the domination of Craig. In that case, we held that the disparate treatment of the codefendant was not a factor that required the trial court to follow the jury’s recommended sentence for the murder. Craig, 510 So.2d at 870-71. We also concluded that Craig’s “legal responsibility for the murder ... was not secondary to but was fully equal to that of [the codefen-dant].” Id. at 870. Here, McCloud’s “legal responsibility” for the murders is greater than that of his codefendants based on his first-degree murder convictions.
Finally, the law is clear that “[i]n instances where the codefendant’s lesser sentence was the result of a plea agreement or prosecutorial discretion” claims of disparate sentencing are rejected. England v. State, 940 So.2d 389, 406 (Fla.2006) (quoting Right v. State, 784 So.2d 396, 401 (Fla.2001)); see also Krawczuk v. State, 92 So.3d 195, 207 (Fla.2012) (concluding that defendant’s disparate sentencing claim was without merit where eodefendant’s sentence of thirty-five years was the result of plea to second-degree murder); Brown v. State, 473 So.2d 1260, 1268-69 (Fla.1985) (concluding that death sentence was proper even though accomplice received disparate prosecutorial and judicial treatment after pleading to second-degree murder in return for life sentence); Melendez v. State, 612 So.2d 1366, 1368-69 (Fla.1992) (“Arguments relating to proportionality and disparate treatment are not appropriate ... where the prosecutor has not charged the alleged accomplice with a capital offense.”); Scott v. Dugger, 604 So.2d 465, 471 (Fla.1992) (“Prosecutorial discretion in plea bargaining with accomplices is not unconstitutionally impermissible and does not violate the principle of proportionality.” (quoting Garcia v. State, 492 So.2d 360, 368 (Fla.1986))). Each of McCloud’s codefendants who were not otherwise ineligible for the death penalty entered into agreements with the State in which they received lesser sentences in exchange for their testimony against McCloud and their pleas of no contest to the lesser offense of second-degree murder. But the majority inexplicably ignores this fact in concluding that “the term-of-years sentences imposed against McCloud’s codefendants preclude McCloud’s death sentences.” Majority op. at 689.
“[U]nder article II, section 3 of Florida’s constitution, ‘the decision to charge and prosecute is an executive responsibility, and the state attorney has complete discretion in deciding whether and how to prosecute.’” Wade v. State, 41 So.3d 857, 875 (Fla.2010) (quoting State v. Bloom, 497 So.2d 2, 3 (Fla.1986)). “We have emphasized that ‘the judiciary has authority to curb pretrial prosecutorial discretion “only in those instances where impermissible motives may be attributed to the prosecu *693 tion, such as bad faith, race, religion, or a desire to prevent the exercise of the defendant’s constitutional rights.’”” Id. (quoting State v. Donner, 500 So.2d 532, 533 (Fla.1987)). Nonetheless, with this decision, the majority has stripped Florida’s state attorneys of their discretion to waive the death penalty for certain defendants without also foregoing the death penalty for other codefendants who might later be viewed by this Court as either equally culpable or less culpable on the face of the appellate record. Prosecutors are privy to information about the facts and players involved in a case beyond that which is contained in the record on appeal, and this Court should not place “the State in the untenable Catch-22 of either not obtaining a conviction or of doing what is determined by the state attorney to be necessary to obtain the conviction of the defendant but thereby insulating the defendant from the death penalty.” Hazen, 700 So.2d at 1216 (Wells, J., concurring in part and dissenting in part). For these reasons, I conclude that the majority inappropriately applied a relative culpability analysis here.[6]
McCloud also asserts that he is entitled to relief from his death sentences under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Hurst v. Florida, — U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). As I explained in my dissent in Hurst v. State, the only flaw identified by the Supreme Court that rendered Florida’s former death penalty statute unconstitutional was its failure to require a jury finding of an aggravating circumstance. See Hurst v. State, No. SC12-1947, 202 So.3d 40, 77-78, 2016 WL 6036978, at *32 (Fla. Oct. 14, 2016) (Canady, J., dissenting) (noting “the Hurst v. Florida Court’s repeated identification of Florida’s failure to require a jury finding of an aggravator as the flaw that renders Florida’s death penalty law unconstitutional”); see also Hurst v. Florida, 136 S.Ct. at 624 (“Florida’s sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional.”). But McCloud’s jury did make findings as to the existence of two aggravating circumstances: (1) that McCloud was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person, based on the contemporaneous murder of the other victim, and (2) that the capital felony was committed while McCloud was engaged in the commission of a burglary and/or a robbery. The jury unanimously determined that both of these aggravating circumstances were proven beyond a reasonable doubt as reflected in their separate verdicts finding McCloud guilty of the contemporaneous first-degree murder of the other victim and the armed robbery and armed burglary during which the *694 murders occurred. Thus, McCloud is not entitled to relief under Hurst v. Florida or Ring.
The other penalty-phase issues raised by McCloud are -without merit. Accordingly, I would affirm McCloud’s death sentences.
POLSTON, J., concurs.

. I previously expressed my view that comparative proportionality review by this Court is precluded by the conformity clause in article I, section 17 of the Florida Constitution, which requires this Court to interpret our state constitutional prohibition on cruel or unusual punishment in conformity with the decisions of the United States Supreme Court interpreting the parallel provision of the United States Constitution, Yacob v. State, 136 So.3d 539, 557-63 (Fla.2014) (Canady, J., concurring in part and dissenting in part). Because relative culpability is an aspect of our comparative proportionality review, I would conclude, for the same reasons detailed in Yacob, that it too is precluded by the conformity clause. But because my view on the subject was expressly rejected by the majority in Yacob and because I have stated that "[u]n-til the State presents an argument justifying receding from our precedent on the subject that was clearly established in Yacob, I will follow that precedent,” Delgado v. State, 162 So.3d 971, 983 (Fla.2015) (Canady, J., concurring), I therefore do not rely on my view of the conformity clause to reach the conclusion that McCloud’s sentences should be affirmed.