855 So.2d 611 (2003)
Victor Tony JONES, Appellant,
v.
STATE of Florida, Appellee.
Victor Tony Jones, Petitioner,
v.
James V. Crosby, Jr., Secretary, Department of Corrections, State of Florida, Respondent.
Nos. SC01-734, SC02-605.
Supreme Court of Florida.
September 11, 2003.
Rehearing Denied September 11, 2003.
*613 William M. Hennis, III, Assistant CCRC, Office of the Capital Collateral Regional Counsel, South, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Jones, an inmate currently incarcerated under a sentence of death, appeals an order of the circuit court denying relief, after an evidentiary hearing, on his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Jones also has filed a petition for writ of habeas corpus in this Court. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. Having heard oral argument and considered each of the issues raised here, we both affirm the lower court's order and deny the defendant's petition.

I. FACTS
Appellant was convicted of two counts of first-degree murder and two counts of armed robbery. He was sentenced to death for both murders and to life imprisonment on each of the robbery counts, *614 with all sentences to run consecutively. The facts of appellant's crimes are more fully discussed in this Court's opinion in Jones v. State, 652 So.2d 346 (Fla.), cert. denied, 516 U.S. 875, 116 S.Ct. 202, 133 L.Ed.2d 136 (1995). In December 1990, Jones, on his second day of work for Matilda and Jacob Nestor, an elderly couple, killed them both at their place of business. He stabbed Mrs. Nestor once in the back, severing her aorta. As Mr. Nestor approached, appellant stabbed him in the chest, penetrating his heart. Nestor, however, retreated to his office where he extracted the knife, attempted to telephone for help, and fired his .22 caliber pistol five times, striking Jones in the forehead once. No valuables were found on either victim or in Mrs. Nestor's purse, and Mr. Nestor's body had been rolled over for removal of valuables from his pockets. When the police arrived, they broke down the locked door and found appellant inside the locked building, slumped on a couch with Nestor's pistol under his arm and with Mrs. Nestor's purse. The couple's personal valuables and wallets were retrieved from appellant's pockets. After taking appellant outside, police realized appellant had been shot and took him to the hospital. Appellant told officers that Nestor shot him and told an intensive care nurse that he killed the couple because they owed him money.
On direct appeal, this Court affirmed the convictions and sentences. Jones, 652 So.2d at 353.[1] Jones later filed a motion and an amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, asserting 22 issues.[2] After *615 a Huff[3] hearing, the court granted an evidentiary hearing limited to appellant's claims of ineffective assistance of counsel related to a voluntary intoxication defense, mitigation, and appellant's pretrial competency. After the evidentiary hearing, the lower court denied relief on all claims.
In this appeal Jones raises five issues, several of which include subissues.[4] We find it unnecessary to address each claim here and affirm the lower court's denial of relief as to all of the issues raised. We discuss only two of appellant's claims: (1) that trial counsel was ineffective for failing to investigate and present a *616 voluntary intoxication defense at trial, and (2) that counsel failed properly to investigate and present available mitigation during the penalty phase.

II. STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL
Under the standard announced in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to prevail on a claim that counsel provided constitutionally ineffective assistance, a defendant must demonstrate specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Second, the defendant must demonstrate prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. With regard to penalty phase claims of ineffective assistance, this means that the death-sentenced defendant must show that but for counsel's errors, the defendant probably would have received a life sentence. See Rose v. State, 675 So.2d 567, 570-71 (Fla. 1996). A defendant meets this burden by showing that counsel's errors deprived the defendant of a reliable penalty phase proceeding. Id. Ineffective assistance of counsel claims present mixed questions of law and fact subject to plenary review based on the Strickland test. Id. at 571. This requires the Court independently to review the trial court's legal conclusions, while giving deference to the trial court's factual findings.

III. VOLUNTARY INTOXICATION DEFENSE
Appellant claimed that his trial counsel was ineffective for failing to investigate and present a voluntary intoxication defense, and that he was prejudiced because such intoxication negates specific intent, the requisite mental state for firstdegree murder. The trial court concluded that trial counsel chose not to present a voluntary intoxication defense as a matter of trial strategy and that appellant failed to establish prejudice, the second prong of Strickland. We agree.
This Court has held that it will not second-guess counsel's strategic decisions about whether to pursue an intoxication defense. Johnson v. State, 769 So.2d 990, 1001-02 (Fla.2000); see Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (holding that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct"). At the hearing below, appellant's trial counsel testified that he was aware that a toxicology report indicated that appellant's blood contained trace indications of the presence of cocaine. He stated that he did not pursue a voluntary intoxication defense for several reasons. First, it was his experience that juries did not accept voluntary intoxication as a defense or mitigating factor, especially when the charge is murder. In addition, appellant told counsel that he was not intoxicated at the time of the murders and that he was innocenti.e., that an intruder killed his employers. Thus, the evidence supports the trial court's determination that counsel's decision not to pursue an intoxication defense was a reasonable, strategic one. See Stewart v. State, 801 So.2d 59, 65 (Fla.2001) (holding that counsel was not ineffective for failing to employ a voluntary intoxication defense where, at an evidentiary hearing, defense counsel testified that he considered an intoxication defense but determined that it was not a viable defense based on the facts of the case). In addition, appellant maintained his innocence, a defense inconsistent *617 with an intoxication defense. See Cherry v. State, 781 So.2d 1040, 1050 (Fla. 2000) (stating that voluntary intoxication defense is wholly inconsistent with the defense of innocence), cert. denied, 534 U.S. 878, 122 S.Ct. 179, 151 L.Ed.2d 124 (2001); Combs v. State, 525 So.2d 853, 855 (Fla. 1988) (rejecting ineffective assistance claim because the "presentation of an intoxication defense would have been inconsistent with Combs' testimony that he was at home at the time of the murder and did not commit the offense").
Finally, to assert a voluntary intoxication defense, a defendant must present evidence of intoxication at the time of the offense that would establish the defendant's inability to form the requisite specific intent. Rivera v. State, 717 So.2d 477, 485 (Fla.1998); see also Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985) (emphasizing that voluntary intoxication is an affirmative defense and that defendant must come forward with evidence of intoxication, not just use of intoxicants, at the time of offense sufficient to establish an inability to form the intent necessary to commit the crime charged). The lower court found that not one of appellant's witnesses who testified at the hearing on this issue was credible. Appellant's cousin, a convicted felon and admitted drug user and dealer, testified that he and appellant used drugs and "got high" together one day, but he was uncertain whether it was the day before the murders. Further, two psychologists testified that appellant was intoxicated at the time of the murders, but their testimony was based on hearsay interviews with appellant's family members, none of whom could say they saw appellant on the day ofor even the evening beforethe murders. These experts also testified that they relied on the toxicology report, but neither knew what that report meant regarding appellant's intoxication at the time of the murders. Matters of credibility fall within the trial court's ambit. Appellant has not shown the court's rejection of this testimony to be error. In addition, the State's expert witness on toxicology and intoxication testified, based on the toxicology report, that appellant was not intoxicated at the time of the murders. Accordingly, the trial court's determination that appellant failed to establish this claim of ineffective assistance of counsel is affirmed.

IV. INEFFECTIVE ASSISTANCE IN THE PENALTY PHASE
The second claim we address concerns the penalty phase of appellant's trial. During this phase, Dr. Toomer, a psychologist, testified to the jury regarding mental mitigating factors. In addition, Dr. Eisenstein, a neuropsychologist, testified to the court, as did Ms. Long, the aunt who raised appellant. Following the penalty phase, the court found three aggravating factors, but nothing in mitigation, as follows:
As to each murder, the court found in aggravation: 1) Jones was under a sentence of imprisonment at the time of the murder, 2) Jones was convicted of a prior violent felony, 3) the murder was committed during the course of a robbery, and 4) the murder was committed for pecuniary gain, which the court merged with the "during the course of a robbery" aggravating factor. Although Jones presented evidence that he had been abandoned at an early age by his mother and that he suffered from extreme emotional or mental disturbance throughout his life, the court found nothing in mitigation.
652 So.2d at 348-49 (footnote omitted).
Although it is clear that evidence of mitigation was presented at trial, appellant now contends that his counsel provided *618 ineffective assistance by failing adequately to investigate and present mitigation during the penalty phase. In support of this claim, at the evidentiary hearing appellant presented the testimony of two of his relatives regarding his childhood and of several expert witnesses who had evaluated appellant before his trial but did not testify. The trial court concluded that counsel's investigation was reasonable and that appellant failed to establish prejudice. Competent, substantial evidence supports this determination.
An attorney has a duty to conduct a reasonable investigation for possible mitigating evidence. See Rose v. State, 675 So.2d 567, 571 (Fla.1996). The evidence demonstrates that appellant's trial counsel fulfilled that duty. Appellant's trial counsel testified that appellant told him that he was frequently beaten during his childhood, and counsel interviewed several people. The aunt who raised appellant contradicted appellant's claims. She described appellant's childhood as largely "idyllic," as did another of appellant's close relatives. In addition, one of appellant's teachers described appellant as a good student, and school records obtained by counsel bore this out. She also said she never saw any evidence of abuse. At the evidentiary hearing, appellant presented the testimony of his sister and cousin to corroborate his claim. Although appellant's sister Pamela, who lived in New York, arguably corroborated appellant's claim, she testified that she did not know how to contact anyone in her family until 1997 and that no one in her family knew how to contact her during this time, either. The evidence therefore supports the court's finding that she was unavailable. In addition, the court found both her testimony and that of appellant's cousin was not credible and was contradicted by the evidence appellant's trial counsel was actually able to obtain at the time of trial. Thus, there is no credible evidence that additional investigation by appellant's trial counsel for family mitigation would have been fruitful.
Appellant's related contention that trial counsel failed to conduct a reasonable investigation into mental health mitigation fails as well. Appellant's trial counsel testified that he had appellant evaluated by six different experts: a neuropsychologist, a neurologist, and four psychologists. He then specifically chose to rely on Dr. Toomer and Dr. Eisenstein based on the quality and quantity of their work. Accordingly, as the trial court found, defense counsel's decisions regarding which experts should testify was both reasonable and strategic in nature, and he cannot now be deemed ineffective for failing to call additional mental health witnesses to testify. See Haliburton v. Singletary, 691 So.2d 466, 471 (Fla.1997). Further, the evidence supports the trial court's conclusion that the testimony of appellant's experts at the evidentiary hearing conflicted with regard to diagnosis, the interpretation of the information provided them, and the applicability of mitigators, and defense counsel cannot be deemed ineffective for not presenting these conflicting opinions. See Asay v. State, 769 So.2d 974, 986 (Fla. 2000) ("[T]he trial court correctly found that trial counsel conducted a reasonable investigation into mental health mitigation evidence, which is not rendered incompetent merely because the defendant has now secured the testimony of a more favorable mental health expert.").
Appellant also claimed that counsel failed to provide the experts with additional information. As the lower court found, this claim fails as well. Dr. Toomer testified that all the "new information" appellant provided him before the evidentiary *619 hearing merely reinforced, but left unchanged, his conclusions presented at trial.

V. INEFFECTIVE ASSISTANCE ON DIRECT APPEAL
Jones's petition for writ of habeas corpus raises seven claims of ineffective assistance of appellate counsel.[5] Because these claims are either barred or lack merit, we deny the petition as to these grounds without further discussion. Jones also contends that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We recently rejected this claim in Bottoson v. Moore, 833 So.2d 693, (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and we deny Jones's claim as well. Further, we note that one of the aggravators found was that Jones had a prior violent felony conviction, a factor which under Apprendi and Ring need not be found by the jury. See Bottoson, 833 So.2d at 723 (Pariente, J., concurring in result only) (explaining that "in extending Apprendi to capital sentencing, the Court in Ring did not eliminate the `prior conviction' exception").
Accordingly, we affirm the lower court's denial of Jones's motion for postconviction relief, and we deny his petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
While I concur with the majority opinion in virtually all respects, for the reasons expressed in my opinion in Duest v. State, 855 So.2d 33, 52-57, 2003 WL 21467248 (Fla. June 26, 2003), I cannot agree with the majority's discussion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
NOTES
[1] Appellant argued that the trial court erred by denying his motion for judgment of acquittal on the two armed robbery counts; by failing to instruct the jury that if it found both the aggravating factors of "during the course of a robbery" and "for pecuniary gain," that it had to consider the two factors as one; by rejecting Jones's mitigation claim of mental or emotional disturbance at the time of the offense; by denying Jones's motion for mistrial based upon various alleged improper comments made by the prosecutor during penalty phase closing argument; and by refusing to consider Jones's abandonment by his mother as a mitigating circumstance. Jones, 652 So.2d at 349. In addition, appellant contended that a new sentencing proceeding was needed because the mental health experts failed to raise the possibility that Jones suffered from fetal alcohol syndrome.
[2] The amended motion argued the following points: (1) postconviction counsel was ineffective because of the lack of sufficient funding fully to investigate and prepare the postconviction motion; (2) appellant was denied due process and equal protection because records were withheld by state agencies; (3) no adversarial testing occurred at trial due to the cumulative effects of ineffective assistance of counsel, the withholding of exculpatory or impeachment material, newly discovered evidence, and improper rulings of the court; (4) trial counsel was ineffective for (a) failing adequately to investigate and prepare mitigating evidence, (b) failing to provide this mitigation to mental health experts, and (c) failing adequately to challenge the State's case; (5) trial counsel was burdened by an actual conflict of interest adversely affecting counsel's representation; (6) appellant was denied due process because he was incompetent, and trial counsel failed to request a competency evaluation; (7) appellant was denied a fair trial because of improper prosecutorial argument, and trial counsel was ineffective for failing to object; (8) appellant's convictions are constitutionally unreliable based on newly discovered evidence; (9) appellant was denied due process because the state withheld exculpatory evidence; (10) appellant's death sentence is unconstitutional because the penalty phase jury instructions shifted the burden to appellant to prove death was inappropriate; (11) the jury instructions on aggravating circumstances were inadequate, facially vague, and overbroad, and trial counsel was ineffective for failing to object; (12) appellant's death sentence is unconstitutional because the State introduced nonstatutory aggravating factors, and counsel was ineffective for failing to object; (13) jury instructions unconstitutionally diluted the jury's sense of responsibility in sentencing, and trial counsel was ineffective for not objecting; (14) appellant was denied his constitutional rights in pursuing postconviction relief because he was prohibited from interviewing jurors; (15) appellant is innocent; (16) execution by electrocution is unconstitutional; (17) Florida's capital sentencing statute is unconstitutional facially and as applied; (18) appellant's conviction and sentence are unconstitutional because the judge and jury relied on misinformation of constitutional magnitude; (19) appellant's death sentence is unconstitutional because it is predicated on an automatic aggravating circumstance, and counsel was ineffective for failing to object; (20) appellant "is insane to be executed"; (21) because of juror misconduct, appellant's rights were violated; and (22) cumulative errors deprived appellant of a fair trial.
[3] Huff v. State, 622 So.2d 982, 983 (Fla.1993) (requiring trial court to hold hearing on postconviction motion in death penalty cases "to determin[e] whether an evidentiary hearing is required and to hear legal argument relating to the motion").
[4] Jones contends in his first issue that trial counsel was constitutionally ineffective for failing to investigate a voluntary intoxication defense, failing to present other evidence consistent with the defense at trial, failing to challenge several jurors for cause, and failing to ensure appellant's presence at all critical stages of trial, and that no reliable adversarial testing occurred at the guilt phase as a result of the combined effects of trial counsel's deficient performance. The claim regarding voluntary intoxication is addressed in the body of the opinion. Each of these claims fails to meet the standard established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because each is either insufficiently pled or is conclusively refuted by the record. Jones's second issue alleges that defense counsel had a conflict of interest that denied appellant the effective assistance of counsel. This issue was fully argued during trial, and the court ruled on this issue. The claim thus could have and should have been raised on direct appeal and is procedurally barred. See Wike v. State, 698 So.2d 817, 820-21 (Fla.1997), cert. denied, 522 U.S. 1058, 118 S.Ct. 714, 139 L.Ed.2d 655 (1998); Waterhouse v. State, 596 So.2d 1008, 1015 (Fla.), 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). In his third issue, Jones argues that no adequate adversarial testing occurred at the penalty phase because trial counsel failed properly to investigate and present available mitigation, failed to present evidence to support the unconstitutionality of appellant's prior convictions, and failed to object to constitutional error with regard to jury instructions. The claim regarding investigation and presentation of mitigation is addressed in the opinion, and the claim regarding appellant's prior convictions is conclusory and thus fails under Strickland. Appellant's claims regarding the trial court's giving or failing to give certain standard jury instructions could and should have been or were raised on direct appeal; the claims also fail because this Court has expressly upheld these instructions against identical challenges. See Asay v. State, 769 So.2d 974, 989 (Fla.2000); San Martin v. State, 705 So.2d 1337, 1350 (Fla.1997), cert. denied, 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); Oats v. Dugger, 638 So.2d 20, 21 n. 1 (Fla. 1994), cert. denied, 513 U.S. 1087, 115 S.Ct. 744, 130 L.Ed.2d 645 (1995); Jackson v. State, 648 So.2d 85, 91 (Fla.1994); Combs v. State, 525 So.2d 853, 858 (Fla.1988) (rejecting defendant's claim that standard jury instruction is unconstitutional under Caldwell). Appellant argues as his fourth issue on appeal that the lower court erred in determining that public documents were exempt from disclosure, but the claim as stated is legally insufficient. Finally, appellant asserts that he is "insane to be executed" but admits that this issue is not ripe for review.
[5] Jones claims that appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) trial counsel's conflict of interest and the trial court's denial of trial counsel's motion to withdraw; (2) the denial of appellant's motions to suppress; (3) trial counsel's objection to the substitution of the medical examiner; (4) the voluntariness of Jones's pleas in prior cases; (5) the trial court's denial of Jones's motion to compel psychiatric examination of a witness; (6) the trial court's denial of defense counsel's motion for mistrial based on the prosecutor's "inferential" comment on petitioner's right to remain silent; and (7) the invalidity of the jury instructions under Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).