875 So.2d 586 (2004)
Richard Eugene HAMILTON, Appellant,
v.
STATE of Florida, Appellee.
Richard Eugene Hamilton, Petitioner,
v.
State of Florida, Respondent.
Nos. SC02-1426, SC02-2409.
Supreme Court of Florida.
June 3, 2004.
*589 Charles E. Lykes, Jr., Clearwater, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Curtis M. French, Senior Assistant Attorney General, and Cassandra K. Dolgin, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Richard Eugene Hamilton, an inmate under sentence of death, appeals an order denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm the denial of Hamilton's motion and deny the petition for habeas corpus.

I. FACTS
Hamilton was convicted of first-degree murder, armed sexual battery, armed robbery, and armed kidnapping. He was sentenced to death. The facts of Hamilton's crimes are discussed in this Court's opinion in Hamilton v. State, 703 So.2d 1038, 1040 (Fla.1997). We briefly restate them.
Hamilton and his codefendant, Anthony Wainwright, escaped from a North Carolina prison and made their way to Florida in a stolen car. In April 1994, when the car overheated in Lake City, Florida, the men abducted at gunpoint Carmen Gayheart, a young mother of two, as she loaded groceries into her Ford Bronco. They stole the Bronco and drove north on Interstate 75. The men raped, strangled, and executed Gayheart by shooting her twice in the back of the head. They were arrested the next day in Mississippi following a shootout with a trooper. Hamilton and Wainwright were tried in a single trial with separate juries.
This Court affirmed Hamilton's convictions and sentence on direct appeal. Hamilton, 703 So.2d at 1045. Hamilton later filed a motion and an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, asserting seventeen issues.[1] After a Huff[2] hearing, the trial court granted an evidentiary hearing limited to claims (3), (4), (5), (8), (9), and (10). After the evidentiary hearing, the trial court denied relief on all claims.

*590 II. 3.850 APPEAL
In this appeal, Hamilton raises nine issues. We find it unnecessary to address each claim here and affirm the trial court's denial of relief as to all of the issues raised. We discuss only two of Hamilton's claims: (1) whether trial counsel was ineffective regarding the issue of venue, and (2) whether trial counsel was ineffective regarding the presentation of mitigation during the penalty phase.[3]
To prevail on a claim that defense counsel provided ineffective assistance, a defendant must demonstrate specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant also must demonstrate prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present mixed questions of law and fact subject to plenary review, and this Court independently reviews the trial court's legal conclusions, while giving deference to the trial court's factual findings. Occhicone v. State, 768 So.2d 1037,1045 (Fla.2000).

A. Change of venue
Hamilton claims trial counsel was ineffective for failing to properly advise him regarding the issue of venue. Hamilton was charged by indictment with first-degree murder, armed robbery, armed kidnaping, and armed sexual battery. For each count, the indictment read, "The grand jurors of Hamilton County, Florida, charge that Richard Eugene Hamilton and [the codefendant] on the 27th day of April, 1994, in Columbia County, Florida and/or Hamilton County, Florida,...." (Emphasis added.) Before trial, trial counsel filed a motion for change of venue, alleging that because of adverse pretrial publicity, the trial should be moved from Hamilton County. The motion contained an index with twenty-two newspaper articles about the crime. Trial counsel also filed a supplemental motion containing affidavits in support of the first motion. One of these affidavits was from Hamilton himself, and stated in pertinent part:
Affiant has read and understands the motion for change of venue prepared by *591 his attorney, personally joins in the motion and requests a change of venue.
Affiant believes that a change of venue is necessary and proper because adverse pretrial publicity, as evidenced by the exhibits attached to his motion, would prevent him from receiving an impartial trial in Hamilton County, where the case is now pending.
The motion for change of venue was initially denied, but the trial court reserved ruling in an attempt to seat a jury in Hamilton County. Ultimately the attempt to select a jury in Hamilton County was unsuccessful and the State agreed that the defense's motion should be granted. The trial court granted the motion, and at a subsequent hearing stated:
The Court has investigated potential locations for moving the trial, and as previously announced, locations considered were Leon, Escambia, Okaloosa, Nassau, and Clay Counties. The closest and best accommodations were available in Clay County. Mr. Blair and Nancy Nydam, Court Administrator, and Goldie Hudson, Juror Coordinator, met with personnel and the Sheriffs have talked and Clay County has been more than cooperative with meeting the needs of Hamilton and Columbia Counties.... So Clay County will be the site of the trial.
(Emphasis added.)
Hamilton argues that if he had been properly informed of his rights, he could have elected venue so as to change the location of the trial and separate his trial from the codefendant. Hamilton claims that trial counsel did not properly exercise Hamilton's right to be tried in Columbia County, where the offense was committed, which, he alleges, would have clearly been a more neutral location for the trial. The trial court denied this claim without an evidentiary hearing, finding that Hamilton's election of a venue change before trial effectively waived or barred the claim in postconviction proceedings.
"[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). Where the motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied. Ragsdale v. State, 720 So.2d 203, 207 (Fla. 1998). However, in cases where there has been no evidentiary hearing, this Court must accept the defendant's factual allegations to the extent the record does not refute them. See Peede v. State, 748 So.2d 253, 257 (Fla.1999). In other words, this Court must examine each claim to determine if it is legally sufficient, and if so, determine whether or not the claim is refuted by the record. Atwater v. State, 788 So.2d 223, 229 (Fla.2001).
Hamilton's venue claim is not legally sufficient. The defendant is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel if he alleges specific "facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Gaskin v. State, 737 So.2d 509, 516 (Fla.1999) (quoting Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990)). Hamilton has demonstrated neither deficient performance nor prejudice. First, the record demonstrates that the purpose of the defense's motion for change of venue was to move the trial away from the area of pretrial publicity. The county Hamilton now claims he wanted, Columbia County, was the victim's *592 home county. Columbia County was never suggested as an alternative venue because it was as adversely affected by publicity as Hamilton County. This is demonstrated in part by the newspaper articles attached to the change of venue motion: of the twenty-two articles, thirteen were from the Lake City Reporter, a newspaper based in Columbia County. We are convinced, from a review of the record, that trial counsel made a reasonable, tactical decision in seeking to have the trial moved completely out of the area instead of to the alternatively charged, and equally affected, Columbia County.
Second, no authority supports Hamilton's allegation that a change of venue would have resulted in a separate trial. Hamilton bases his argument on Leon v. State, 695 So.2d 1265 (Fla. 4th DCA 1997). In Leon, the charging document alleged venue in "Okeechobee and/or Martin County," and on appeal, the defendant alleged that the State failed to prove venue as charged. Id. at 1266. The Fourth District noted that the Florida Constitution allows the State to charge venue in two or more counties conjunctively when, as in Leon, the precise location of the offense is not known. Therefore, the question the Fourth District decided was whether "the locution and/or is conjunctive, as the constitution permits." Id. The Fourth District found no error in the allegation of venue. Therefore, Leon simply does not support Hamilton's claim that a change of venue to Columbia County would have resulted in a separation of the charges.

B. Failure to present mitigation
Hamilton claims that trial counsel was ineffective for failing to present his father, mother, and sister during the penalty phase to establish mitigation. After an evidentiary hearing, the trial court found:
The Defendant next claims that counsel was ineffective for not having his mother, father, and sister testify at the penalty phase of his trial. All three testified at the hearing that they were willing to testify at trial. However, the mother admitted that she and her doctors told [trial counsel] that she was unable to do so, the sister admitted that she told [trial counsel] she would not testify if pregnant because of her history of miscarriages and [trial counsel] testified that the father was so angry and upset that he believed his testimony would do more harm than good.
Counsel had interviewed these people extensively and subpoenaed them, but had good reasons for not calling them to testify. Instead, he presented testimony from the Defendant's brother, cousin, and the mother of his former girlfriend. Based on their testimony, the court found that several nonstatutory mitigators had been established. The other family members' testimony was cumulative to that presented at trial, and there is no reasonable likelihood that such testimony would have resulted in a life sentence.
(Citations omitted.)
The trial court's factual findings are supported by competent, substantial evidence in the record. Trial counsel was well prepared and well informed with respect to Hamilton's family, and simply made a reasonable, tactical decision not to present certain family members during the penalty phase based on their unavailability and poor cooperation. This is not a case where trial counsel failed to investigate any available mitigating witnesses or evidence. See, e.g., Rose v. State, 675 So.2d 567, 571-72 (Fla.1996) (noting that an attorney has a duty to conduct a reasonable investigation for possible mitigating evidence). Trial counsel presented three witnesses during *593 the penalty phaseHamilton's cousin, his brother, and his ex-girlfriend's motherand based on their testimony, the trial court found five nonstatutory mitigators: (1) Hamilton was raised in a drug-ridden, crime-infested neighborhood; (2) Hamilton's mother was mentally ill; (3) Hamilton suffered various childhood traumas, including the loss of an eye in a BB gun accident; (4) Hamilton had been gainfully employed and had good work habits; and (5) Hamilton assisted police in locating the victim's body.
Hamilton also claims trial counsel was ineffective for failing to present a mental health expert at the penalty phase.[4] The trial court denied this claim, stating:
The Defendant's last claim is that [trial counsel] was ineffective for not hiring a psychiatrist who could testify that he had been taking psychiatric medications. However, counsel retained Dr. Umesh Mhatre, a psychiatrist, as a confidential expert, and the Defendant introduced no evidence at the hearing to support his claim of having been or needing to be medicated. Instead, Dr. Mhatre stated that, while he could have testified to nonstatutory mitigators similar to those found by the court, no statutory mitigators existed and that he could have been cross-examined about the Defendant's being a sociopath. [Trial counsel] testified that Dr. Mhatre told him that his testimony would do more harm than good, that, in his experience, juries do not view sociopaths favorably, and that he made a strategic decision not to have the doctor testify. He also stated that he discussed this strategy with his client. Counsel's representation was reasonable and did not prejudice the Defendant.
(Citation omitted.)
Competent, substantial evidence in the record supports the trial court's factual findings for this claim as well. Trial counsel retained a mental health expert, Dr. Mhatre, who examined Hamilton and concluded that Hamilton suffered from an antisocial personality disorder. Based on this information and his experience in trying capital cases, counsel decided not to present Dr. Mhatre at the penalty phase because, in counsel's opinion, Dr. Mhatre's testimony would have done more harm than good. Trial counsel's decision not to present Dr. Mhatre was informed and strategic. See, e.g., Van Poyck v. State, 694 So.2d 686, 689-92 (Fla.1997) (finding no ineffectiveness of counsel where counsel made a tactical decision not to present a mental health expert whose findings would not be helpful). We find, therefore, that on the issue of the presentation of mitigation during the penalty phase, Hamilton has failed to demonstrate that trial counsel's performance was deficient. Moreover, Hamilton has also failed to demonstrate that but for counsel's alleged errors, he would probably have received a life sentence. See Rose, 675 So.2d at 570-71.

III. PETITION FOR WRIT OF HABEAS CORPUS
Hamilton's petition for writ of habeas corpus raises seven issues. Because these claims are either procedurally barred or lack merit, we deny the petition *594 without further discussion except as to the following issue.[5] Hamilton contends that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We first rejected this claim in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and have rejected it several times since. See, e.g., Rivera v. State, 859 So.2d 495, 508 (Fla.2003); Jones v. State, 855 So.2d 611, 619 (Fla.2003); Conde v. State, 860 So.2d 930, 959 (Fla. 2003), cert denied, ___ U.S. ___, 124 S.Ct. 1885, 158 L.Ed.2d 475 (2004); McCoy v. State, 853 So.2d 396, 409 (Fla.2003); Owen v. Crosby, 854 So.2d 182, 193 (Fla.2003); Fennie v. State, 855 So.2d 597, 607 n. 10 (Fla.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1877, 158 L.Ed.2d 471 (2004); Caballero v. State, 851 So.2d 655, 663-64 (Fla.2003); Belcher v. State, 851 So.2d 678, 685 (Fla.), cert. denied, ___ U.S. ___, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003); Allen v. State, 854 So.2d 1255,1262 (Fla.2003). We deny Hamilton's claim as well. Further, we note that one of the aggravators the jury found was that Hamilton had a prior violent felony conviction, a factor which under Ring and Apprendi need not be found by the jury. See Jones, 855 So.2d at 619 (denying claim based on Ring v. Arizona where the aggravating circumstances the jury found included a prior violent felony). Accordingly, we affirm the trial court's denial of Hamilton's motion for postconviction relief, and we deny the petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion.
CANTERO, J., concurs with an opinion, in which WELLS and BELL, JJ., concur.
*595 ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
CANTERO, J., concurring.
I concur in the majority opinion. Moreover, regarding Hamilton's claim that Florida's capital sentencing scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I also would hold, for the reasons stated in my specially concurring opinion in Windom v. State, 29 Fla. L. Weekly S191, S197-203 (Fla. May 6, 2004), that Ring does not apply retroactively.
WELLS and BELL, JJ., concur.
NOTES
[1] Hamilton's amended motion argued: (1) electrocution is cruel and unusual punishment; (2) trial counsel was ineffective regarding venue; (3) trial counsel was ineffective for failing to present testimony from Hamilton's family members in support of a motion to suppress; (4) trial counsel was ineffective for allowing Hamilton's jury to hear the codefendant's cross-examination of a witness; (5) trial counsel was ineffective regarding Hamilton's jury overhearing testimony meant only for the codefendant's jury; (6) trial counsel was ineffective for failing to allow co-counsel to conduct the penalty phase; (7) trial counsel was ineffective for failing to request instructions on nonstatutory mitigation; (8) trial counsel was ineffective regarding the presentation of mitigation; (9) trial counsel was ineffective regarding a claim of juror misconduct; (10) trial counsel was ineffective for failing to consult a psychiatrist; (11) the DNA evidence was insufficient to establish Hamilton's guilt; (12) further DNA testing would reveal new evidence that would exonerate Hamilton; (13) lethal injection is improper as an ex post facto method of execution; (14) trial counsel was ineffective for failing to object when the jury reported its sentencing recommendation; (15) trial counsel was ineffective for failing to request an independent act instruction; (16) appellate counsel was ineffective; and (17) new evidence may be discovered.
[2] See Huff v. State, 622 So.2d 982, 983 (Fla. 1993) (requiring the trial court to hold a hearing on postconviction motions in death penalty cases to "determin[e] whether an evidentiary hearing is required and to hear legal argument relating to the motion").
[3] The other issues Hamilton raises, which we reject without extended discussion, are as follows: Hamilton's second issue alleges that trial counsel was ineffective for failing to present testimony from Hamilton's family members in support of a motion to suppress. This claim is without merit because it fails to meet the standard established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To the extent Hamilton argues that his statements were not voluntary in violation of the federal and state constitutions, this claim is procedurally barred because the issue was fully addressed by this Court in Hamilton's direct appeal. See Hamilton, 703 So.2d at 1044. Hamilton's claims that trial counsel was ineffective regarding Hamilton's jury overhearing testimony meant only for the codefendant's jury, regarding a claim of juror misconduct, for allowing Hamilton's jury to hear the codefendant's cross-examination of a witness, and for failing to request an independent act instruction, all fail under Strickland. Finally, Hamilton claims that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), invalidates his death sentence. This claim is without merit. See Duest v. State, 855 So.2d 33, 49 (Fla.2003), cert denied, ___ U.S. ___ 124 S.Ct. 2023, 158 L.Ed. 2d 500 (U.S. 2004); Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert denied, ___ U.S. ___, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003).
[4] In a related claim, Hamilton alleges trial counsel was ineffective for waiting until two weeks before trial was originally scheduled to consult a mental health expert (Dr. Umesh Mhatre), for failing to ask Dr. Mhatre to explore nonstatutory mitigation, and for failing to arrange an interview between Dr. Mhatre and Hamilton's family. This specific claim was not raised in Hamilton's postconviction motion, and therefore is procedurally barred. See Thompson v. State, 759 So.2d 650, 668 n. 12 (Fla.2000) (finding a claim procedurally barred because it was not alleged in the postconviction motion filed in the trial court).
[5] Hamilton's first two issues allege that trial counsel was ineffective regarding venue, for failing to ensure the jury did not engage in improper deliberations, and for failing to adequately prepare for the penalty phase. These claims were raised in Hamilton's rule 3.850 proceedings and therefore, are procedurally barred. See Porter v. Crosby, 840 So.2d 981, 984 (Fla.2003) ("[C]laims raised in a habeas petition which petitioner has raised in prior proceedings and which have been previously decided on the merits in those proceedings are procedurally barred in the habeas petition."). As his third issue, Hamilton claims appellate counsel was ineffective for failing to raise a Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), claim on direct appeal. Although claims of ineffective assistance of appellate counsel are cognizable in a habeas petition, see Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000), we deny Hamilton's claim because the Bruton claim was not preserved for review. In the absence of fundamental error, appellate counsel cannot be deemed ineffective for failing to raise an unpreserved claim. See Rutherford, 774 So.2d at 646. Fourth, Hamilton claims appellate counsel was ineffective for failing to raise an improper prosecutorial argument claim. Because this claim was addressed by this Court in Hamilton's direct appeal, see Hamilton, 703 So.2d at 1043-44, it is procedurally barred. See Gorby v. State, 819 So.2d 664, 682 (Fla.2002) (stating that ineffective assistance of counsel claim is denied because "this issue was presented in the direct appeal of [appellant's] sentence of death"). As his sixth issue, Hamilton contends that appellate counsel was ineffective for failing to address the issues of venue, the independent acts instruction, the severing of the trials, the testimony of Robert Murphy, the State's improper arguments, and the unconstitutionality of the death penalty. The claim as stated is conclusory and insufficiently pled, and thus is denied. Finally, Hamilton claims the cumulative effect of the errors warrants relief. However, because Hamilton has failed to demonstrate any individual errors, his cumulative error claim also fails. See Downs v. State, 740 So.2d 506, 509 (Fla. 1999).