896 So.2d 695 (2004)
Anthony Floyd WAINWRIGHT, Appellant,
v.
STATE of Florida, Appellee.
Anthony Floyd Wainwright, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-1342, SC02-2021.
Supreme Court of Florida.
November 24, 2004.
Rehearing Denied March 1, 2005.
*696 Joseph T. Hobson of McFarland, Gould, Lyons, Sullivan and Hogan, P.A., Clearwater, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Cassandra K. Dolgin, Meredith Charbula and Charmaine M. Millsaps, Assistants Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Anthony Floyd Wainwright, an inmate under sentence of death, appeals an order denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions for a writ of habeas *697 corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm the denial of Wainwright's motion and deny the petition.

I. FACTS
Wainwright was convicted of first-degree murder, armed robbery, armed kidnapping, and armed sexual battery. He was sentenced to death. The facts of Wainwright's crimes are discussed in this Court's opinion in Wainwright v. State, 704 So.2d 511, 512-13 (Fla.1997). We briefly restate them.
Wainwright and his co-defendant, Richard Hamilton, escaped from a North Carolina prison and made their way to Florida in a stolen car. In April 1994, when the car overheated in Lake City, Florida, the men abducted at gunpoint Carmen Gayheart, a young mother of two, as she loaded groceries into her Ford Bronco. They stole the Bronco and drove north on Interstate 75. The men raped, strangled, and executed Gayheart by shooting her twice in the back of the head. They were arrested the next day in Mississippi following a shootout with a trooper. Wainwright and Hamilton were tried in a single trial with separate juries.
This Court affirmed Wainwright's convictions and sentence on direct appeal. Wainwright, 704 So.2d at 512. Wainwright later filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising 14 issues.[1] After a Huff[2] hearing, the trial court granted an evidentiary hearing on claims 4, 7, 10, 12, and 14. After the evidentiary hearing, the court denied relief on all claims.

II. 3.850 APPEAL
On appeal, Wainwright raises eight issues. We affirm the trial court's denial of relief as to all the issues raised. Only three issues merit extended discussion: (1) whether trial counsel was ineffective regarding the admission of additional DNA evidence; (2) whether trial counsel was ineffective regarding Wainwright's statements and admissions; and (3) whether initial counsel was ineffective in his pretrial representation of Wainwright.
To prevail on a claim that defense counsel provided ineffective assistance, a defendant must demonstrate specific acts or omissions of counsel that are "so serious that counsel was not functioning as the `counsel' guaranteed the defendant *698 by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must also demonstrate prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present mixed questions of law and fact subject to plenary review. This Court independently reviews the trial court's legal conclusions, while giving deference to the trial court's factual findings. Occhicone v. State, 768 So.2d 1037, 1045 (Fla.2000).

A. Additional DNA Evidence
Wainwright first claims that trial counsel was ineffective with respect to additional DNA evidence the State introduced after opening statements. At the time of trial, the State had provided the defense with three genetic loci on the sperm sample from the back seat of the victim's car. At the end of the day following opening statements, the State informed trial counsel that new test results revealed three additional genetic loci, making a total of six, and that odds against the donor being anyone but Wainwright were now astronomical. Wainwright, 704 So.2d at 514. On day eight of the proceedings (opening statements occurred on day four), trial counsel filed a motion in limine seeking to exclude the additional DNA evidence. The trial court heard arguments on the motion, denied it, and gave the defense 24 hours to prepare for the conclusion of the testing. On direct appeal, this Court held the trial court did not err in admitting the additional evidence. Wainwright, 704 So.2d at 514-15. This Court noted that trial counsel made no subsequent objection after the twenty-four hour continuance. Id. at 515.
Wainwright now claims that trial counsel was ineffective for failing to preserve the issue and for failing to raise the issue of prosecutorial misconduct or discovery violation. The trial court denied this claim without an evidentiary hearing, finding it procedurally barred.
"[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient." Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). Where the motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied. Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). However, in cases where there has been no evidentiary hearing, this Court must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. See Peede v. State, 748 So.2d 253, 257 (Fla.1999). In other words, this Court must examine each claim to determine if it is legally sufficient, and if so, determine whether or not the claim is refuted by the record. Atwater v. State, 788 So.2d 223, 229 (Fla.2001).
The trial court properly denied this claim because it is refuted by the record. The record demonstrates that trial counsel did preserve the issue; trial counsel filed a motion in limine seeking to exclude the DNA evidence and argued the motion to the trial court. In fact, this Court addressed the issue of the admissibility of the evidence on direct appeal, which demonstrates that the issue was preserved. Also, during the arguments on the motion, trial counsel argued that the defense was prejudiced by the discovery being provided after opening statements. The defendant is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel if *699 he alleges specific "facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Gaskin v. State, 737 So.2d 509, 516 (Fla.1999) (quoting Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990)).
Even if counsel's performance were deficient, Wainwright has failed to demonstrate any prejudice. During trial, several witnesses testified that Wainwright admitted to sexually assaulting the victim. Thus, no reasonable probability exists that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. The jury was well aware that the sperm samples found in the victim's car were from Wainwright because Wainwright admitted as much.

B. Wainwright's Statements and Admissions
Wainwright alleges trial counsel was ineffective with respect to incriminating statements Wainwright made to law enforcement officers between May 9 and May 20, 1994. On direct appeal, Wainwright claimed the trial court erred in denying his motion to suppress these statements, and this Court noted the facts specific to this claim:
[Wainwright] was arrested in Mississippi and voluntarily returned to Florida. On his return, officers reached an agreement with Wainwright and his lawyer[3] whereby the State would not seek the death penalty if Wainwright met three conditions: (1) He did not contribute to Gayheart's death; (2) he was truthful in his conversations with police; and (3) he passed a lie detector test. Pursuant to this agreement, Wainwright made a number of incriminating statements from May 9 to May 20, 1994, and assisted officers in recovering evidence of the crime. When he was transported to the State Attorney's office on May 20, however, he conferred with his lawyer, admitted for the first time that had [sic] sexually assaulted Gayheart, and refused to take the lie detector test. Police had no further contact with Wainwright after that point.
Wainwright, 704 So.2d at 513. This Court upheld the trial court's denial of the motion to suppress, finding that by the time Wainwright made the incriminating statements, "the agreement between the parties was a fait accompli. There was no need for `free and open discussions,' i.e., privileged discussions, since the deal already had been sealed. No public policy would be furthered by suppressing such statements." Id. at 514.
As his postconviction claim, Wainwright first argued that trial counsel was ineffective for failing to preserve this issue for appeal. The trial court denied this claim without an evidentiary hearing, finding that the issue was procedurally barred and that the allegation of ineffectiveness is insufficient to overcome the procedural bar.
The trial court properly denied this claim. The record rebuts Wainwright's allegation. During trial, trial counsel filed a motion to suppress the statements Wainwright made on May 9, 11, and 20. The trial court heard arguments on the motion and denied the motion, and this Court addressed the issue on direct appeal.
To the extent Wainwright argues that trial counsel was ineffective for failing to move for a Richardson[4] hearing on Wainwright's *700 May 10 statement, the trial court properly denied the claim on that basis as well. Although trial counsel did not specifically move for a Richardson hearing, the matter of the May 10 statement was extensively discussed at trial in response to a defense motion to suppress the statement. The following explains what occurred at trial.
Sheriff Reid, a law enforcement officer involved in the investigation, was deposed by the defense and testified to Wainwright's May 11 statement. After the deposition, Sheriff Reid informed the State that Wainwright had made another statement on May 10. The prosecutor stated he did not disclose it "because I was not aware of the fact that, really, that had not been brought out in the deposition." When the prosecutor reviewed the deposition, it became apparent to him that the defense was not put on notice of the May 10 statement, and he informed trial counsel of the statement and alerted the trial court to the inadvertent discovery violation. In response, trial counsel argued that the defense was prejudiced by the statement and that the State had committed a discovery violation. The trial court ruled that it would allow the statement "and find that it is a procedural technical violation, which does not deprive the Defense of any other opportunities they would have had to rebut or confront such testimony."
Wainwright has demonstrated neither deficient performance nor prejudice. Trial counsel properly preserved the issue for review, filed motions to suppress the statements, and argued the merits of those motions. At trial, counsel thoroughly cross-examined Sheriff Reid about the statements.
Wainwright has also failed to demonstrate prejudice. No reasonable probability exists that, but for counsel's alleged errors, the result of the proceeding would have been different. In addition to Wainwright's incriminating statements, the State presented Wainwright's confessions to fellow inmates Robert Murphy and Gary Gunter, as well as DNA evidence linking him to the crime. The trial court properly denied this claim.

C. Initial Plea Negotiations
Upon Wainwright's arrival in Florida after his arrest in Mississippi, Victor Africano was assigned to represent him. Africano sought to negotiate a plea bargain with the State. The conditions of the plea were that Wainwright was to fully cooperate with the police and pass a polygraph examination proving that he was not the person who killed Gayheart. Shortly after Wainwright refused to take the polygraph examination, Africano filed a motion to withdraw from the case.
Wainwright claims that Africano was ineffective for failing to have the plea agreement reduced to writing, failing to explain the plea, and allowing Wainwright to speak to law enforcement officers alone. The trial court denied this claim after an evidentiary hearing, finding:
[Wainwright] testified on this claim at the evidentiary hearing and stated that he would have taken a polygraph examination at the State Attorney's Office on May 20, 1994, but for the lack of a written plea agreement. Mr. Africano was terminally ill at the time of the hearing, and the parties stipulated that he was unavailable. The State introduced testimony from Sheriff Harrell Reid and State Attorney Jerry Blair. Both stated that the Defendant refused to take the polygraph test after confessing that he both raped and killed the victim. Mr. Blair testified that a written *701 plea agreement was never requested.
At the hearing the Defendant also denied raping and killing the victim and stated that he was willing to take the polygraph examination on May 20, 1994 and would have passed it. This is contradicted by testimony at the trial and at the hearing. The Court finds the Defendant's testimony at the hearing to be incredible. It is obvious that the plea negotiations were terminated because the Defendant could not meet the conditions of the agreement, i.e., he could not pass a polygraph test to demonstrate that he did not rape and kill the victim.
Mr. Africano was an experienced trial lawyer, and counsel must be presumed to have acted in a reasonable manner. That the plea negotiations failed was due to the Defendant's inability to meet the conditions of the plea agreement, not to anything Mr. Africano did or did not do.
With the exception of the emphasized sentence above, the trial court's factual findings are supported by competent, substantial evidence in the record.[5] Africano did not testify at the evidentiary hearing.[6] Wainwright, Sheriff Reid, State Attorney Jerry Blair, and trial counsel did.
Wainwright testified that upon his arrival in Florida, he met with Africano for about 25 to 30 minutes. He said Africano told him about the following plea bargain: if he cooperated and he passed a polygraph examination that showed he did not participate in the rape or murder, he would receive a life sentence. After speaking with Africano, Wainwright met with Sheriff Reid and others, but during this meeting, no mention was made of the plea bargain. Also, the bargain was never reduced to writing and Africano never talked to Wainwright about a written agreement. Wainwright then went on two outings with law enforcement officers to gather evidence. Finally, some days later, Wainwright was transported to the state attorney's office, where he refused to take the polygraph. Wainwright explained that he refused to take the polygraph "because I had asked him [Sheriff Reid] while we were down in the state attorney's office could I get something in writing regarding our deal. He said he didn't know nothing about no deal." Wainwright testified that when he asked Africano about the deal, "He didn't say nothing." Finally, Wainwright stated he was still willing to take the polygraph, and would have cooperated further had there been a written agreement.
Sheriff Reid, the sheriff of Hamilton County, testified that when Wainwright was first transported to Florida, Reid spoke with Africano and explained that law enforcement officers were interested in determining who actually killed the victim, and that if Wainwright could prove that he was not involved in the murder, then "we were willing to offer him a chance at life without parole and not seek the death penalty. Not me personally, but through negotiations." Sheriff Reid testified that he had discussed the deal with State Attorney Jerry Blair. Sheriff Reid explained that before the polygraph was to be taken, Africano alerted the Sheriff that Wainwright had a statement to make. "At that point, I went into the conference room where he and Mr. Africano were and Mr. *702 Wainwright told me that he had raped and had sex with Ms. Gayheart." Wainwright then declined to take the polygraph. Finally, Sheriff Reid testified that he did not recall Wainwright stating he would not take the polygraph unless he had a written agreement.
State Attorney Jerry Blair, who prosecuted Wainwright at trial, testified that he informed Africano that if Wainwright could pass a polygraph test showing that he was not the "triggerman," then the State would accept a guilty plea in exchange for a life sentence if Wainwright testified against the codefendant. Blair also testified that his office used a substantial assistance form that recited the terms of a plea agreement, and had a request been made to put this deal in writing, that form would have been available and the deal would have been reduced to writing. Like Sheriff Reid, Blair testified that after stating that he had raped the victim, Wainwright refused to take the polygraph. Blair testified that the State was willing to go through with the deal despite Wainwright's admission about the rape.
Finally, trial counsel testified that he spoke to Africano, as best as he could recall, on two occasions. Trial counsel explained that they discussed the plea bargain and in response to a question about why the polygraph did not occur, Africano told him that the negotiations had broken down. Africano never commented to him about Wainwright's desire to have the plea agreement reduced to writing.
Wainwright has failed to demonstrate that Africano rendered ineffective assistance. Wainwright testified that if the deal had been in writing, he would have taken the polygraph examination. The evidence established, however, that Wainwright refused to take the polygraph after admitting he had raped the victim. No testimony, other than Wainwright's, indicates that Wainwright was interested in having the plea reduced to writing at the time of the negotiations. The trial court found Wainwright's testimony at the hearing not credible. It further found that the plea negotiations were terminated because Wainwright could not meet the conditions of the agreement, i.e., he could not pass a polygraph test to demonstrate that he did not rape and kill the victim.
Also, Africano did not allow Wainwright to speak to law enforcement officers alone, as Wainwright alleges. Although there were instances during the investigation when Africano was not present, as part of the plea bargain Wainwright was required to fully cooperate and freely give statements to the police.
Even if Africano's performance had been deficient in some way, Wainwright has failed to demonstrate prejudice. He alleges that because of Africano's deficient performance, he was sentenced to death even though he had been promised a life sentence if he took a polygraph test and passed it. This argument assumes that Wainwright would have passed the test, a contention which the testimony and evidence at trial rebuts. Thus, Wainwright has failed to demonstrate that a reasonable probability exists that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. The trial court properly denied this claim.

D. Other Issues
We find the remaining issues Wainwright raises also without merit. We address them only briefly.
First, Wainwright argued that trial counsel was ineffective concerning the collateral crime evidence introduced at trial. This claim is procedurally barred because it was raised and addressed in Wainwright's direct appeal. See Wainwright, 704 So.2d at 516 n.9. To the extent Wainwright re-characterizes his argument as *703 ineffective assistance of counsel, claiming that trial counsel failed to preserve the issue, the record rebuts the claim. Trial counsel raised the issue with the trial court in a motion in limine.
Next, Wainwright claims trial counsel was ineffective for failing to move for a mistrial when a microphone was discovered in Wainwright's cell. This claim is without merit because it fails to meet the standard established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To the extent Wainwright argues that the presence of the microphone violated his constitutional rights, or that the trial court engaged in ex parte communication, this claim is procedurally barred because it could have been raised on direct appeal. See, e.g., Harvey v. Dugger, 656 So.2d 1253 (Fla.1995).
Wainwright's claim that trial counsel was ineffective for failing to preserve issues relating to jury instructions, prosecutorial misconduct, and aggravating factors, for failing to maintain a proper attorney-client relationship, and for failing to investigate and present additional mitigating evidence, all fail under Strickland.
Finally, Wainwright's claim that trial counsel was ineffective for introducing statements of the codefendant is without merit because trial counsel's decision to introduce this information was consistent with his trial strategy and theory of defense. Trial counsel's decision was reasonable under the norms of professional conduct. See Occhicone v. State, 768 So.2d 1037, 1048-49 (Fla.2000) ("The issue is not what present counsel or this Court might now view as the best strategy, but rather whether the strategy was within the broad range of discretion afforded to counsel actually responsible for the defense.").

III. PETITION FOR WRIT OF HABEAS CORPUS
Wainwright's petition for writ of habeas corpus raises four issues. These claims are either procedurally barred or lack merit. Only one issue merits discussion.[7] Wainwright contends that Florida's capital sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We first rejected this claim in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and have rejected it many times since. See, e.g., Rivera v. State, 859 So.2d 495, 508 (Fla.2003); Jones v. State, 855 So.2d 611, 619 (Fla.2003); Conde v. State, 860 So.2d 930, 959 (Fla.2003), cert. denied, 541 U.S. 977, 124 S.Ct. 1885, 158 L.Ed.2d 475 (2004); McCoy v. State, 853 So.2d 396, 409 (Fla.2003); Owen v. Crosby, 854 So.2d 182, 193 (Fla.2003); Fennie v. State, 855 So.2d 597, 607 n. 10 (Fla.2003), cert. denied, 541 U.S. 975, 124 S.Ct. 1877, 158 L.Ed.2d 471 (2004); Caballero v. State, 851 So.2d 655, 663-64 (Fla.2003); Belcher v. State, 851 So.2d 678, 685 (Fla.), cert. denied, 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003); Allen v. State, 854 *704 So.2d 1255, 1262 1262 (Fla.2003). We deny Wainwright's claim as well. We note that one of the aggravators the jury found was that Wainwright had a prior violent felony conviction, a factor which under Ring and Apprendi need not be found by the jury. See Jones v. State, 855 So.2d 611, 619 (Fla.2003) (denying claim based on Ring v. Arizona where the aggravating circumstances the jury found included a prior violent felony).
Accordingly, we affirm the trial court's denial of Wainwright's motion for postconviction relief, and we deny the petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Wainwright's motion argued: (1) trial counsel was ineffective regarding the admission of additional DNA evidence; (2) trial counsel was ineffective regarding Wainwright's statements and admissions; (3) trial counsel was ineffective regarding evidence of Wainwright's out of state crimes; (4) trial counsel was ineffective regarding a microphone discovered in Wainwright's cell; (5) trial counsel was ineffective for failing to object to the penalty phase instructions on the aggravators; (6) trial counsel was ineffective for failing to object to the prosecutor's argument at the guilt and penalty phases; (7) trial counsel was ineffective for failing to maintain a proper attorney-client relationship, failing to ensure that Wainwright received adequate mental health evaluations and failing to investigate and present additional mitigating evidence; (8) trial counsel was ineffective for allowing the victim's family to testify at sentencing; (9) trial counsel was ineffective for failing to object to an alleged Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), error; (10) initial counsel, Victor Africano, was ineffective in his pretrial representation of Wainwright; (11) trial counsel was ineffective for failing to be prepared for trial; (12) trial counsel was ineffective for introducing statements of the codefendant; (13) trial counsel was ineffective for committing an alleged discovery violation; (14) trial counsel's illness during trial rendered him ineffective.
[2] See Huff v. State, 622 So.2d 982, 983 (Fla.1993) (requiring the trial court to hold a hearing on postconviction motions in death penalty cases to "determin[e] whether an evidentiary hearing is required and to hear legal argument relating to the motion").
[3] This lawyer was initial counsel Victor Africano.
[4] Richardson v. State, 246 So.2d 771, 776 (Fla.1971) ("[W]hen it is brought to the attention of the trial court during the course of the proceedings that the State has failed to comply with the [discovery] Rule the Court has a discretion to determine if such failure has prejudiced the defendant on trial ... [b]ut ... the trial court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances.").
[5] Contrary to the trial court's finding, neither Sheriff Reid nor State Attorney Blair testified that Wainwright refused to take the polygraph after confessing that he both killed and raped the victim; according to them, he confessed only to raping her.
[6] At the evidentiary hearing, the parties stipulated that Africano was unavailable to testify. The stipulation noted that Africano was confined to a wheelchair, in excruciating pain, and taking pain medication which may have affected his memory and ability to relate.
[7] Wainwright's second issue alleges that trial counsel failed to raise an issue involving the felony murder jury instruction. The claim as stated is conclusory and insufficiently pled, failing even to state the standard of review for an ineffective assistance of counsel claim, and thus is denied. Wainwright's third and fourth issues allege that the trial court erred by failing to make specific findings before requiring Wainwright to wear a stun belt at trial and by failing to conduct a Koon v. Dugger, 619 So.2d 246 (Fla.1993), inquiry. These claims are procedurally barred. See, e.g., Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989) (finding that "habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial").